Judge Terri F. Love
11 This appeal arises from a petition to recover, ad valorem taxes paid under protest. Defendants filed a motion for summary judgment contending that plaintiff was not entitled to a refund of taxes paid under protest because plaintiffs property *623 was not exempt from ad valorem taxation. Plaintiff then filed a cross-motion for summary judgment alleging that it provides public housing and is therefore exempt from ad valorem taxation. The trial court found that plaintiff was not entitled to the return of taxes paid under protest because plaintiffs housing was not considered “public housing.” As such, plaintiffs property was not exempt from ad valorem taxation.
Plaintiff appeals contending that the trial court misinterpreted this Court’s jurisprudence on the matter. We find that the trial court legally erred by ending the analysis after first finding that plaintiffs property was privately owned. The trial court did not consider the second prong of the test required when determining whether property is exempt from ad valorem taxation. Accordingly, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

19FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Michael Vales formed Mirabeau Family Learning Center, Inc. (“MFLC”), a Louisiana non-profit corporation, as a vehicle to counteracting poverty. MFLC acquired the property (“Property”) in question in 1995, “for the specific purpose of constructing housing units to provide affordable housing to low and very low income families.” MFLC entered into a Land Use Restriction Agreement (“LURA”) with the requirement that the Property be used “solely to provide housing to low- and very low-income families.” Filmore Parc Apartments II (“Filmore”), a partnership in commendam, was formed by Mr. Vales with MFLC as the general partner. The Housing Outreach Fund VII Limited Partnership, a Fannie Mae entity, is the limited partner. MFLC’s interest in the Property was then transferred to Filmore.
Filmore operated the Property as “affordable housing for low- and very low-income families.” The Property operates 32 units as Section 8 Project Based Voucher units. The remaining units meet the requirements of § 42 of the Internal Revenue Code. Filmore contends that the Property is operated pursuant to the federal Hope VI program[1] and La. R.S. § 40:600.1-600.24.[2] However, Filmore Parc was assessed ad valorem taxes for the Property for the 2014 tax year. Filmore paid $61,755.92 on January 24, 2014, and contended that it was exempt pursuant to Louisiana Const. Art. VII, § 21(A).
Filmore then filed a Petition to Recover Taxes Paid Under Protest against IsNorman Foster, Chief Financial Officer and Director of Finance for the City of New Orleans; Erroll Williams, as the Assessor of Orleans Parish; and the Louisiana Tax Commission. Mr. Williams filed an Exception of Lack of Subject Matter Jurisdiction included with his Answer because Filmore failed to appeal the tax assessment. Mr. Williams also filed a Motion for Summary Judgment contending that the housing units in the Property were not exempt from ad valorem taxation. Filmore *624 filed a Cross-Motion for Summary Judgment alleging exemption. Following a hearing, the trial court found that the Property was not exempt from ad valorem taxation for 2014. Accordingly, the trial court granted Mr. Williams’ Motion for Summary Judgment and denied Filmore’s Cross-Motion for Summary Judgment. Filmore’s Petition for Suspensive Appeal followed.
Filmore asserts that the trial court legally erred by applying the incorrect legal test and misinterpreting jurisprudence to conclude that the Property was not tax exempt.

STANDARD OF REVIEW

“[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(A)(3). “The burden of proof rests with the mover.” La. C.C.P. art. 966(D)(1). However, “if the mover will not bear the burden of proof at trial on the issue that is before the court,” then the mover is required “to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(D)(1).
An appellate court reviews the granting of a motion for summary judgment |4with the de novo standard of review. Brunet v. Fullmer, 00-0644, p. 3 (La.App. 4 Cir. 1/10/01), 777 So.2d 1240, 1241. “Appellate courts use the ‘same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.’ ” Weintraub v. State Farm Fire & Cas. Co., 08-0351, p. 2 (La.App. 4 Cir. 10/29/08), 996 So.2d 1195, 1196-97, quoting Supreme Servs. and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638.

PUBLIC HOUSING

Filmore avers that the trial court misinterpreted this Court’s jurisprudence and limited the applicability of the test for exemption from ad valorem taxation. Fil-more contends that as long as property “and its revenues are dedicated to the public purpose” and the property is being used for that purpose, the property should be exempt. Filmore asserts that if the trial court applied this correct legal test, then the Property would have been deemed exempt.
“‘Exemptions from taxation are strictly construed, an exemption being an exceptional privilege which must be clearly and unequivocably and affirmatively established.’” Abundance Square Associates, L.P. v. Williams, 10-0324, p. 5 (La.App. 4 Cir. 3/23/11), 62 So.3d 261, 263-464, quoting Holley v. Plum Creek Timber Co., Inc., 38,716, p. 7 (La. App. 2 Cir. 6/23/2004), 877 So.2d 284, 290. “La. Const, art. VII, § 21(A) exempts ‘public property used for public purposes’ from ad valorem taxation.” Slay v. Louisiana Energy & Power Auth., 473 So.2d 51, 53 (La. 1985). “This general exemption includes all property owned by the state and the various political subdivisions of the State.” Id. However, “[t]he Louisiana Supreme Court acknowledged that property can ‘vest’ in the public even | ^though the ‘title be not in the public.’ ” Abundance Square, 10-0324, p. 5, 62 So.3d at 264, quoting Adm’rs of Tulane Educ. Fund v. Board of Assessors, 38 La.Ann. 292 (1886), 1886 WL 4310, *4. After examining the first requirement for tax exemption, there is no question that Filmore’s Property is privately owned.
*625 “The second requirement for ad valorem tax exemption is that the public property be used for a public purpose.” Slay, 478 So.2d at 54. “Louisiana jurisprudence holds that ownership alone is not the determining factor and that privately owned property may be dedicated to public use to attain tax exempt status.” Abundance Square, 10-0324, p. 10, 62 So.3d at 266. “[H]ow the revenue derived from private property is used may be considered in determining whether the property is dedicated to public use.” Id. Therefore, the Property could be exempt from taxation if it is used for a public purpose. See Abundance Square, 10-0324, p. 5, 62 So.3d at 264.
The Louisiana Supreme Court examined whether privately owned property could be vested in the public in such a way that the property would be exempt from taxation. Tulane, 38 La.Ann. at 295. All of the revenue collected from the private property was dedicated to maintaining the property, which was utilized as part of a university. Id., 38 La.Ann. at 296. The Court found that the “property, dedicated to a public use, the revenues of which serve a public purpose” was “public property although the title be not in the public.” Id., 38 La.Ann. at 297.
The Louisiana Supreme Court then examined whether a toll bridge, a quarter of which was in Mississippi, was exempt from taxation. Warren Cty., Miss. v. Hester, 219 La. 763, 54 So.2d 12, 14 (1951). The bridge was privately owned, so the Court next turned to whether the bridge was dedicated to public use. Id., 54 So.2d at 15. A large portion of the revenue derived from the use of the toll bridge was used to |fipay off the obligations incurred to buy the bridge. Id., 54 So.2d at 16. Because the revenue was used to pay off the bridge and not solely devoted to the “maintenance and economic operation” of the bridge, the Court held that the bridge was not dedicated to a public use. Id. The Court also noted that the owner’s intention of making the bridge toll free “at some future date” was an unrealistic basis for finding a public use. Id.
Similarly, the Second Circuit Court of Appeals examined Tulane and Warren to determine whether privately owned land leased to the Louisiana Department of Wildlife and Fisheries for use as a Wildlife Management Area was exempt from taxation. Holley, 38,716, p. 1, 877 So.2d at 287. The court found “that the lease of private property to the DWF for the public purpose of establishing a WMA falls within the exemption from taxation contained in La. Const, art. 7, § 21.” Id., 38,716,p. 10, 877 So.2d at 291.
In Abundance Square with a fact pattern similar to the present matter, this Court reviewed whether some housing units of a housing development were exempt from ad valorem taxation. 10-0324,p. 1, 62 So.3d at 262. The Abundance Square housing developments were constructed on land owned by HANO,[3] but leased to private entities. 10-0324,p. 2, 62 So.3d at 262. Once the lease expired, the ownership of the housing automatically reverted back to HANO. Id., 10-0324,p. 3, 62 So.3d at 262. All of the housing units were required to be operated as “ ‘qualified low-income units’ under Section 42 of the U.S. Internal Revenue Code.” Id., 10-0324,p. 3, 62 So.3d at 263. Some units “had to be ^operated as ‘public housing’ under Section 3(b) of the U.S. Housing Act[4] and others as Section *626 Eight—‘project based vouchers.’ ” Id. Revenue from the PHA units was used solely for “the operation and maintenance costs of those units.” Id., 10-0324,p. 11, 62 So.3d at 267. This Court found that the PHA Units were “dedicated to public use, clearly serve a public purpose and, thus,” were “exempt from ad valorem taxes under Louisiana Const. Art. VII, § 21(A).” Id., 10-0324,p. 12, 62 So.3d at 267. The Section 8 units were not exempt. Id.
After Abundance Square, this Court examined “whether warehouses and office buildings owned by the Port of New Orleans when leased to third party private, for-profit, commercial tenants are exempt under La. Const, art. VII, § 21(A),” Bd. of Com’r of Port of New Orleans v. City of New Orleans, 13-0881, p. 6 (La.App. 4 Cir. 2/26/14), 135 So.3d 821, 825. This Court distinguished Abundance Square by stating “we do not find this case to be controlling as each case must be examined on an individual basis and because Abundance dealt with property owned by a for-profit entity rather than a political subdivision of the State of Louisiana.” Port of New Orleans, 13-0881, p. 9, 135 So.3d at 827. This Court found that “genuine issues of material fact concerning whether the specific activities being conducted by The Kearney Companies and Southern Intermodal Xpress serve any governmental function or public use” existed and remanded the matter. Port of New Orleans, 13-0881, pp. 9-10, 135 So.3d at 827.
In the present matter, the trial court did not discern beyond the first prong of the test for finding tax exemption. The trial court stated: “How can private property acquired through private funds, even if it’s held out for the public at some | slater time could ever be vested in or owned by the public. I think it falls on that alone. I don’t even get to the second part because I can’t even get over the first part.” The trial court also referenced Tulane for the differentiation that while private property used for a university can be dedicated to a public use, private property utilized -for housing was not exempt. The trial court stated that: “I think Tulane, any time you get to a university, that’s going to be a very different discussion than housing and housing post-Katrina.” The trial court also expressed concern about a flood of new litigation seeking tax exempt status. Further, the trial court interpreted Port of New Orleans, for the requirement that tax exempt “public housing,” used as a term of art, be strictly limited in potential applicability to only HANO defined public housing on public lands.
The trial court did not examine the second prong of the test regarding whether the Property was dedicated to a public use after finding that the Property was privately owned. As such, the trial court committed a legal error and did not consider the restrictions Filmore placed upon the Property in furtherance of the mission of providing affordable housing for “low- and very low-income residents in New Orleans.”
Accordingly, we find that the trial court committed legal error by failing to apply the proper test to determine whether Fil-more dedicated the Property to a public use. We reverse the trial court’s judgment granting Mr. Williams’ Motion for Summary Judgment, and remand the matter to the trial court for consideration of the public use factor in determining whether the Property is exempt from ad valorem taxation.

J¿DECREE

For the above-mentioned reasons, we find that the trial court committed a legal error when it failed to apply the proper test for determining whether the Property *627 is public. Therefore, we reverse the trial court’s grant of Mr. Williams’ Motion for Summary Judgment and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED

. "In 1992, the federal government launched Hope VI, a program aimed at replacing dilapidated, obsolete public housing projects with new, redesigned mixed income housing units. Pursuant to Hope VI, HUD issued grants to cities and local public housing authorities for physical revitalization and management improvements. HUD also encouraged the housing authorities to develop public/private partnerships with private sector developers and management firms to build, own and operate the new units." Abundance Square Associates, L.P. v. Williams, 10-0324, p. 2 (La.App. 4 Cir. 3/23/11), 62 So.3d 261, 262.

. Formerly the Louisiana Housing Finance Act ("LHFA”).

. Housing Authority of New Orleans.

. For the purposes of this opinion, Filmore’s public housing units operated pursuant to the more stringent set of requirements are referred to as “PHA Units,” as opposed to the Section 3(b) of the U.S. Housing Act designation of the cited case.