| PLAQUEMINES DIRT & CLAY COMPANY, L.L.C. | * | NO. 2019-CA-0831 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| PLAQUEMINES PARISH GOVERNMENT | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 64-082, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge Dale N. Atkins)

**LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS**

**BROWN, J., CONCURS IN PART AND DISSENTS IN PART FOR THE REASONS ASSIGNED BY J. LOBRANO**

Stephen O'Brien Scandurro
Timothy D. Scandurro
SCANDURRO & LAYRISSON, L.L.C.
607 St. Charles Avenue
New Orleans, LA 70130

    COUNSEL FOR PLAINTIFF/APPELLEE

L.V. Cooley, IV
William S. Culver, Jr.
Assistant Parish Attorney
Plaquemines Parish Government
333 F. Edward Hebert Blvd, Building 100
Belle Chasse, LA 70037

    COUNSEL FOR DEFENDANT/APPELLANT

Jeff Landry
Attorney General
Richard L. Traina
Assistant Attorney General
Louisiana Dept. of Justice
Civil Division
P.O. Box 94005
Baton Rouge, LA 70804-9005

       COUNSEL FOR THE LOUISIANA COASTAL PROTECTION
       AND RESTORATION AUTHORITY/AMICUS CURIAE


Michelle L. Neil
Brian J. Marceaux
Julius P. Hebert, Jr.
Hebert & Marceaux
4752 Highway 311, Suite 114
Houma, LA 70360

       COUNSEL FOR TERREBONNE PARISH CONSOLIDATED
       GOVERNMENT/AMICUS CURIAE


Loulan J. Pitre, Jr.
Jane A. Jackson
Kelly Hart Pitre
400 Poydras Street, Suite 1812
New Orleans, LA 70130

       COUNSEL FOR ASSOCIATION OF LEVEE BOARDS OF
       LOUISIANA/AMICUS CURIAE

Donelson T. Caffery, III
Donelson T. Caffery, III, APLC
543 Spanish Turn Road
Baton Rouge, LA 70802

       COUNSEL FOR LOUISIANA LANDOWNERS ASSOCIATION/
       AMICUS CURIAE

                REVERSED IN PART AND REMANDED

                    JUNE 3, 2020

This is an appeal taken from the granting of a summary judgment in favor of Plaquemines Dirt & Clay Company, L.L.C. ("PDC"). For the reasons that follow, the trial court's ruling is reversed in part and the case is remanded.

### *Procedural History*

PDC owns approximately six hundred (600) acres of land ("Property") within the existing levee system of Plaquemines Parish, Louisiana. The Property is divided into a north pit and a south pit with a large Parish-maintained levee at the rear portion of the Property along a manmade drainage canal. In a letter dated June 14, 2017, the U.S. Army Corps of Engineers, New Orleans District ("Corps"), notified the Plaquemines Parish Government ("PPG") that it proposed to perform construction of the New Orleans to Venice, West Bank Hurricane Protection Levee, NOV-NF-W-06A.2: Pointe Celeste to West Point a la Hache, in Plaquemines Parish. Then, on September 14, 2017, the Plaquemines Parish Council, for and on behalf of the West Bank Levee District, adopted Ordinance 17-121, which purportedly appropriated easement(s) over and across PDC's property for the Corps' project.

1

Shortly thereafter, PDC filed a Petition for Declaratory Judgment, challenging the attempted taking, pursuant to the appropriation ordinance, of a permanent levee servitude on the Property. In the Petition for Declaratory Judgment, PDC sought declarations from the trial court on 1) whether its land was riparian; 2) whether its land was subject to appropriation; and 3) whether the ordinance passed by PPG was premature because the Corps had not finalized the levee design.[1] Next, PDC filed a motion for summary judgment seeking a ruling from the trial court that PDC's property was non-riparian and PPG has no authority to acquire a levee servitude on PDC's property by appropriation ordinance. After hearing arguments on the motion for summary judgment, the matter was taken under advisement. Later, the trial court rendered a judgment granting the motion for summary judgment. The judgment further declared that PDC's property "is not riparian." This appeal followed.

*Appeal*

On appeal, PPG, as well as several amici,[2] argue that the trial court committed legal error in granting the motion for summary judgment because any land that the Corps deems necessary for the rebuilding of levees and other water control structures is subject to appropriation under La. C.C. art. 665. This Court's appellant review of the trial court's granting of a motion for summary judgment is

---

[1] On December 18, 2017, PPG filed a peremptory exception of no cause of action. After a hearing, the trial court rendered a judgment denying PPG's peremptory exception of no cause of action. PPG filed a supervisory writ with this Court. The writ was denied. *Plaquemines Dirt & Clay Co., LLC v. Plaquemines Parish Government,* 2018-0601, *unpub.*

[2] This Court granted leave to the following entities to file amici curiae briefs: 1) the Louisiana Coastal Protection and Restoration Authority; 2) the Association of Levee Boards of Louisiana; and 3) the Terrebonne Parish Consolidated Government. All of these amici are aligned with PPG in challenging the trial court's granting of the summary judgment.

2

*de novo. Lewis v. Jazz Casino Co., LLC*, 2017-0935, p. 5 (La.App. 4 Cir. 4/26/18), 245 So.3d 68, 72.

## *Discussion*

At issue in this case is whether PPG can legally appropriate PDC's property for the Corps' purposes, rather than taking the land by expropriation. In *S. Lafourche Levee Dist. v. Jarreau*, 2016-0788 (La. 3/31/17), 217 So.3d 298, the Louisiana Supreme Court described the distinction between an appropriation and an expropriation. The Court explained that an appropriation is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding, and involves the taking of a servitude. *Id.*, p. 9, 217 So.3d at 305. To the contrary, expropriation requires a court proceeding and usually involves the taking of ownership.[3] *Id.*, p. 10, 217 So.3d at 305. The Court further discussed what provisions of the state constitution authorize such a taking:

> The Louisiana Constitution of 1974 provides for governmental takings of property in both article I, § 4, "Right to Property," and article VI, § 42, "Compensation for Property Used or Destroyed; Tax." Article I, § 4 provides for the expropriation of private property for public purposes while article VI, § 42 provides specifically for the appropriation of private property necessary for levee or levee drainage purposes.

*Id.*, p. 9, 217 So.3d at 305.

In concert with La. Const. art. VI § 42, article 665 of the Louisiana Civil Code, "Legal public servitudes," permits servitudes on property deemed necessary for the building of levees and other water control structures. Prior to a 2006

---

[3] There are also distinct differences in how compensation is determined. However, compensation is not an issue before this Court.

3

amendment of that codal article, servitudes were imposed only on riparian property.[4]  At that time, article 665 read:

> Servitudes imposed for the public or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers and for the making and repairing of levees, roads, and other public or common works.
>
> All that relates to this kind of servitude is determined by laws or particular regulations.

After La. Act 2006 No. 776, the article now reads:

> Servitudes imposed for the public or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers and for the making and repairing of levees, roads, and other public or common works. *Such servitudes also exist on property necessary for the building of levees and other water control structures on the alignment approved by the U.S. Army Corps of Engineers as provided by law, including the repairing of hurricane protection levees.*
>
> All that relates to this kind of servitude is determined by laws or particular regulations.
>
> La. C.C. art. 665 (emphasis added).

"'Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent.'" *Jarreau*, 2016-0788, p. 7, 217 So.3d at 304 (quoting *Pierce Foundations, Inc. v. JaRoy Construction, Inc.,* 2015-0785, p. 6 (La. 5/3/16), 190 So.3d 298, 303). Currently, there is no available case law interpreting article 665 as amended. However, it is a well-settled principle that the interpretation of a legislative enactment begins with the language of the statute itself. *Duckworth v. Louisiana Farm Bureau Mutual Ins. Co*., 2011-2835, p. 12 (La. 11/2/12), 125 So.3d 1057, 1064.  The language in the statute, post amendment, provides for the same type of servitude, that was previously only imposed on riparian property, to now exist on

---

[4] Riparian property is property located on the bank of a navigable waterway.

4

non-riparian property that is "necessary for the building of levees and other water control structures" if that property is located in the alignment approved by the Corps. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written and no further interpretation may be made in search of the legislative intent." *Id.* (citing La. C.C. art. 9; La. R.S. 1:4).

Here, we have clear, unambiguous language that aligns with the legislative intent. A review of the legislative history reveals that the necessity to introduce the amendment arose after the devastation Hurricanes Katrina and Rita inflicted on Louisiana. In furtherance of an effort to protect the State and its citizens from future hurricanes and flood events, allowing for appropriation of non-riparian property pursuant to article 665 created a more expeditious and economical way to access properties needed for that hurricane protection.

It is evident that the plain language of the 2006 amendment to La. C.C. art. 665 eliminated the requirement that land be riparian in order for a servitude to be established if, that property is located in the alignment approved by the Corps. Therefore, we find that the trial court erred in granting the motion for summary judgment. Accordingly, we reverse the trial court's judgment granting PDC's motion for summary judgment, and remand.[5]

REVERSED IN PART AND REMANDED

---

[5] Based on our findings, there is no need to determine the correctness of the trial court's determination that the Property is non-riparian.